# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CYRENA CHANG PAULIN, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 12-0086 (GK) |
| THE GEORGE WASHINGTON UNIVERSITY SCHOOL OF MEDICINE AND HEALTH SCIENCES, | : |
| Defendant. | : |

## MEMORANDUM ORDER

Plaintiff, Cyrena Chang Paulin ("Paulin"), brings this action against the George Washington University School of Medicine and Health Sciences ("the University") for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiff seeks injunctive relief and compensatory damages. This matter is presently before the Court on the School's Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 3]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the School's Motion to dismiss is **denied**.

## I.   BACKGROUND

### A.   Factual Background[1]

Ms. Paulin is a former student in the Physician Assistant degree program ("PA program") at the George Washington University School of Medicine and Health Sciences. By August of 2010,

---

[1] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the plaintiffs. Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc., 525 F.3d 8, 15 (D.C. Cir. 2008). Therefore, the facts set forth herein are taken from the Complaint.

Paulin had completed every requirement for graduation from the PA program except for the final clinical preceptorship[2] and the program's final cumulative exam. Up until that point, Paulin had maintained a 3.27 cumulative GPA (approximately a B+).

Paulin, unlike most of her classmates, was not permitted to select her final preceptorship, but was assigned to an Internal Medicine group. She was later removed from this group because of insufficient medical knowledge and interpersonal problems with her supervisors. Paulin was subsequently dismissed from the PA program and failed to graduate.

From her first day, Paulin experienced difficulties communicating and interacting with the Internal Medicine group. For instance, Daren Harper, the PA who led the teaching team for the first week, did not provide Paulin with any preliminary instructions and did not make any preparations for her arrival. Paulin was repeatedly criticized by preceptors in the Internal Medicine group despite the fact that they had never witnessed her examine or treat a patient. As a result, Paulin was isolated from the rest of the group and her attempts to lodge formal complaints with the School were rebuked.

On September 1, 2010, Liz Blomenberg, a PA in the Internal Medicine group, removed Paulin from her rotation. Blomenberg reported to her supervisor, PA Stacey Jonas-Keeling, that she lacked the ability to teach Paulin because of ongoing interpersonal difficulties. This decision was made notwithstanding the fact that the Internal Medicine group did not highlight any areas for improvement in Paulin's August 20, 2010, evaluation. In another evaluation, one week later, on

---

[2]   A Preceptorship is "a period of practical experience and training for a student, especially of medicine or nursing, that is supervised by an expert or specialist in a particular field." Preceptorship Definition, THE AMERICAN HERITAGE® STEADMAN'S MEDICAL DICTIONARY, http://dictionary.reference.com/medical/preceptorship (last visited July 9, 2012)

August 27, 2010, she was rated as average or below average. As a result of her removal from the Internal Medicine group, Paulin failed her clinical rotation. She was not permitted to retake this rotation and was recommended for dismissal in accordance with University policy.

On September 6, 2010, Blomenberg sent an e-mail to Jonas-Keeling detailing Paulin's lack of foundational medical knowledge and her inability to appreciate constructive criticism. On September 13, 2010, Harper issued a new evaluation of Paulin that was markedly more negative than her previous evaluations.

On September 8, 2010, Dr. Venetia Orcutt, director of the PA program, informed Paulin that unidentified individuals had recommended to the Interim Associate Dean of the Health Sciences Program, Dr. Margaret Plack, that Paulin be removed from the PA program. Paulin, pursuant to University policy, submitted to Dr. Plack a petition appealing the failing grade and the recommendation for dismissal.

An Information Gathering Subcommittee ("IGS") was organized to hear Paulin's appeal. The Subcommittee was comprised of "several physical therapists and one research professor" but no physicians or physician assistants. The IGS did not speak to any of the persons Paulin asked to be interviewed, nor did the Subcommittee review any of Paulin's patient progress notes. The IGS also did not provide Paulin with representation throughout the process. In addition, the report issued by the IGS contained multiple factual errors about Paulin's academic record. During the nine-month appeals process, Paulin solicited letters of recommendation from her fellow students and instructors until the University instructed the professors to refuse those requests.

After the IGS issued its summary report affirming Paulin's failed preceptorship, Dr. Plack recommended to Dr. Jeffery Akman, the Interim Dean of the Medical School, that Paulin be

dismissed from the PA program. Dr. Akman reviewed the case and upheld Dr. Plack's recommendation. Paulin was dismissed from the PA program on April 28, 2011.

In her Complaint, Paulin claims that the University breached the terms and conditions of her enrollment by placing her in a preceptorship with an untrained, untested, and disorganized team which had never before precepted any rotation; by giving her a failing grade without following "normal" grading policies; by failing to request and review patient progress notes in accordance with the University's grading policy; by determining her grade in an arbitrary and capricious manner; and by holding her to different academic standards than other similarly situated students.

Paulin further alleges that the University breached its implied covenant of good faith and fair dealing by making it impossible for her to realize the benefit of her contract and by permitting its agents to act in bad faith.

### B.     Procedural Background

Paulin filed her Complaint on January 19, 2012. On February 23, 2012, the University filed its Motion for Dismissal of the Verified Complaint [Dkt. No. 3]. On March 12, 2012, Paulin filed her Opposition to the University's Rule 12(b)(6) Motion to Dismiss the Complaint [Dkt. No. 11]. On March 30, 2012, the University filed its Reply in Support of its Motion for Dismissal of the Complaint [Dkt. No. 12].

### III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only plead enough facts to state a claim to relief that is plausible on its face and to "nudge[] [his or her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint will not suffice, however, if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556). Instead, the complaint must plead facts that are more than merely consistent with a defendant's liability; "the pleaded factual content [must] allow [ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1940 (citing Twombly, 550 U.S. at 556).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S.. at 563. Under the standard set forth in Twombly, "a court deciding a motion to dismiss must . . . assume all the allegations in the complaint are true (even if doubtful in fact) . . . [and] must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." Aktieselskabet AF. 21 November 2001 v. Fame Jeans Inc., 525 F.3d 8, 17 (D.C. Cir. 2008) (citations and internal quotations omitted). See also Tooley v. Napolitano, 586 F.3d 1006, 1007 (D.C. Cir. 2009) (declining to reject or address the government's argument that Iqbal invalidated Aktieselskabet).

When deciding a 12(b)(6) Motion to Dismiss, a court may consider "only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997); see Stewart v. Nat'l Educ. Ass'n, 471 F.3d 169, 173 (D.C. Cir. 2006).

It is essential to remember that, for the purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be presumed to be true and liberally construed in favor of the Plaintiff. Aktieselskabet AF 21. November 2001, 525 F.3d at15. Therefore, all facts set forth in the Factual Background are taken from the Complaint (see Section A, supra).

### III. ANALYSIS

#### A. Breach of Contract

In Count One, Plaintiff claims that the University breached its contractual obligations with her in five ways: (1) by placing her in a preceptorship with an "untrained, untested, and disorganized team" which had not previously maintained a preceptorship with any other students; (2) by giving Plaintiff a failing grade in this preceptorship without following the University's "normal" evaluation process and grading policies; (3) by failing to "request and review patient progress notes" from the relevant attending personnel in accordance with the University grading policy; (4) by giving Plaintiff a failing grade in her final preceptorship without a sufficient factual basis, and in an arbitrary and capricious manner; and (5) by treating Plaintiff differently than other students -- specifically, allowing her grades to be determined by ill will, personal spite and retaliation, rather than academic merit. Compl. ¶ 85.

The University maintains that it did not owe Paulin any contractual duties other than those contained in the written policies of the George Washington University School of Medicine and Health Sciences Bulletin ("Bulletin"). The parties agree that a valid contractual relationship does exist between them and is governed by the contents of the Bulletin.

In order to successfully state a claim for breach of contract, a Plaintiff must allege: "'(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by the breach.'" Mesumbe v. Howard Univ., 706 F. Supp. 2d 86, 94 (D.D.C. 2010) (quoting Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009)).

The Court is well aware of the extensive case law regarding the contractual relationship between a student and an educational institution. See Hajjar-Nejad v. George Washington Univ.,

802 F. Supp. 2d 166 (D.D.C. 2010); Mesumbe v. Howard Univ., 706 F. Supp. 2d 86 (D.D.C. 2010); Allworth v. Howard Univ., 890 A.2d 194 (D.C. 2006); Alden v. Georgetown University, 734 A.2d 1103 (D.C. 1999).

Alden is the leading case in this area, and its principles have been re-affirmed more recently in Allworth. Thus, it is well established in this jurisdiction "that a judgment by school officials that a student has not performed adequately to meet the school's academic standards is a determination that usually calls for judicial deference." Alden, 734 A.2d at 1108. But "[t]his is not to say that a court may never examine university promotion and tenure decisions. . . . 'The principle of academic freedom does not preclude [the court] from vindicating the contractual rights of a plaintiff who has been denied tenure in breach of a . . . contract.'" Allworth, 890 A.2d at 202, quoting Craine v. Trinity Coll., 791 A.2d 518, 540 (Conn. 2002). Like tenure decisions, decisions involving academic dismissal merit summary judgment (the procedural posture of both Alden and Allworth), "unless the plaintiff can provide some evidence from which a fact finder 'could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance.'" Alden, 734 A.2d at 1109, quoting Clements v. Nassau Cnty., 835 F.2d 1000, 1004 (2d Cir. 1987).

The facts presented in this case, which at this early stage of the litigation must be taken as true, raise serious questions as to whether the decision to dismiss Plaintiff from the Physician Assistant program was "arbitrary and capricious." Allworth, 890 A.2d at 202. Plaintiff cites to direct contradictions in facts and to serious factual errors in the report of the University's Information Gathering Subcommittee.

For example, the Subcommittee's report concluded that Plaintiff's "performance appears to represent a declining trend inconsistent with advancing expectations of an individual who is nearing completion of the program" and referred to her "C" in clinical medicine. In fact, she received a "B" not a "C" in clinical medicine and had received three sequential "A"s before going into her final preceptorship. Another example: in a September 7, 2010, memorandum to Dr. Plack, the Interim Associate Dean of the Medical School, recommending Plaintiff's dismissal from the program, Dr. Venetia Orcutt, the PA program director, referred to a "clinical evaluation" which was considered to be "sub-standard" when, in fact, Plaintiff had received a grade of "A." A final example: the damaging rating of "zero" for fund of medical knowledge in an August 20, 2010, evaluation of Plaintiff during her preceptorship is directly contradicted by a contemporaneous evaluation Dr. Suzanne Chang gave to Plaintiff and her advisor, Professor Howard Straker, that "Cyrena actually has a very strong, solid fund of medical knowledge."

These are but a few examples of facts alleged by Plaintiff -- which <u>must</u> be taken as true -- which prevent this Court, at this early stage, from "concluding that there was a discernible, rational academic basis for both the failing grades and the subsequent dismissal . . . [which would entitle] the University's decision to judicial deference." <u>Alden</u>, 734 A.2d at 1104.

**B.    Breach of Implied Covenant of Good Faith and Fair Dealing**

Count II of the Complaint alleges that the University breached the covenant of good faith and fair dealing that was implicit in Plaintiff's contractual relationship with the University by "making it impossible for Plaintiff to realize the benefit of her contract."

All contracts "contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the

other party to receive the fruits of the contract." Allworth, 890 A.2d at 201 (internal quotation omitted). A party breaches this duty by "evad[ing] the spirit of the contract, willfully render[ing] imperfect performance, or interfer[ing] with performance by the other party." Id. (internal quotation omitted). The test for determining whether a Defendant's actions breached the covenant of good faith and fair dealing is a reasonableness inquiry. Id. at 202.

It is noteworthy that in Alden, upon which the Defendant relies so heavily, the District of Columbia Court of Appeals held that the plaintiff must "provide some evidence from which the fact finder could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." Alden, 734 A.2d at 1103. The facts alleged by Plaintiff in her Complaint, taken as true, do indeed meet that standard.

For the reasons already stated, the Court, at this time, is not prepared to conclude that the University's dismissal of Plaintiff from the PA program was not arbitrary and capricious, and therefore her dismissal is not entitled to the judicial deference usually given to academic decisions of this nature.

**WHEREFORE**, it is this 23rd day of July, 2012, hereby

**ORDERED**, that Defendant's Motion to Dismiss is **denied**; and it is further

**ORDERED**, that an Initial Scheduling Conference is set for **August 22, 2012, at 10:15 a.m.**; and it is further

**ORDERED**, that the parties' LCvR 16.3 Report is to be filed no later than **August 20, 2012, at 4:00 p.m.**

        /s/
        Gladys Kessler
        United States District Judge

**Copies via ECF to all counsel of record**